THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MARCH 27, 2025

*Sarah Pendleton*
SARAH R. PENDLETON
SUPREME COURT CLERK

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MARCH 27, 2025

*Stephens, C.J.*
CHIEF JUSTICE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| EARNEST L. RAAB, D.C., d/b/a SUCCESS TO SIGNIFICANCE LLC, a Washington LLC; MICHAEL ULRICK; LARRY C. WIEBER and ROSE WIEBER, d/b/a TEST FOR NUTRITION OF WASHINGTON, LLC, a Washington LLC; MAX and DEBRA ROBBINS; TONI RAGSDALE, d/b/a RAGSDALE & COMPANY LLC, an Oklahoma LLC; WAYNE MATECKI, LAC, and AMY L. MATECKI, M.D., d/b/a DR. AMY'S INTEGRATIVE MEDICINE, INC., a California corporation, | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 102538-6 <br><br> En Banc <br><br> Filed: <u>March 27, 2025</u> |
| Respondents, | ) ) | |
| v. | ) ) | |
| NU SKIN ENTERPRISES, INC., a Delaware Corporation; PHARMANEX, LLC, a Delaware LLC, | ) ) ) ) | |
| Petitioners, | ) ) | |
| WESTON BLATTER, individually and for the marital community; SCOTT BENNETT, individually and for the marital community; TYLER BENNETT, individually and for the marital community, d/b/a LEADERSHIP INC., a Utah Corporation, and d/b/a FOR OUR FUTURE, INC., a Utah Corporation; BUILD BELIEF, LLC, | ) ) ) ) ) ) ) ) | |

a Nebraska LLC; VLADIMIR KOLBAS, )
individually and for the marital community, d/b/a )
BUILD BELIEF, LLC; ESTEE and BLAKE )
CARTER, wife and husband, individually and for )
the marital community, d/b/a ORANGE GOOSE )
LLC, a Utah LLC, and d/b/a ORANGE GOOSE )
CENTRAL, LLC, a Utah LLC, and d/b/a )
ORANGE GOOSE PARTNERS, LLC, a Utah )
LLC; WILLIAM JONATHAN WHITTAKER )
and KATHIE ANNE WHITTAKER, individually )
and for the marital community, d/b/a )
PHARMANEXMD, LLC, a Florida LLC; )
LATISHA DANIELLE TAYLOR, individually )
and for the marital community, d/b/a HEALTH )
MEASURED VENTURES, LLC, a California )
LLC; STEPHEN MOORE, D.C., individually and )
for the marital community, d/b/a LIVE BETTER )
LONGER MD, LLC, a Florida LLC, and d/b/a )
MD SOLUTION, and d/b/a GET HEALTHY )
USA; and JANE and JOHN DOES, 1-10, )
)
            Defendants. )
_____ )

YU, J. — This case is before us on interlocutory review of an order denying defendants' CR 12(b)(3) motion to dismiss for improper venue. Defendants seek dismissal based on a forum-selection clause in the parties' contract, which designates Utah as the exclusive forum for the resolution of disputes.

This court has not previously determined whether CR 12(b)(3) is the correct procedural mechanism to seek enforcement of a contractual forum-selection clause

2

designating a mandatory, non-Washington forum.[1]  In addition, published case law

from the Court of Appeals is split on this issue; Division One has previously held

that CR 12(b)(3) is the correct procedure, but Division Three reached the opposite

conclusion in this case.  *Compare Voicelink Data Servs., Inc. v. Datapulse, Inc.*, 86

Wn. App. 613, 621-25, 937 P.2d 1158 (1997), *with Raab v. Nu Skin Enters., Inc.*,

28 Wn. App. 2d 365, 378-80, 536 P.3d 695 (2023).  Therefore, we take this

opportunity to resolve the split of authorities on this issue.

   We affirm the approach taken by the Court of Appeals in this case and hold

that CR 12(b)(3) is not the correct procedure to seek enforcement of a contractual

forum-selection clause.[2]  The plain language of CR 12(b)(3) authorizes dismissal

only when "venue" is "improper."  For purposes of this rule, proper venue must be

determined in accordance with Washington's venue statutes and court rules, which

do not provide for dismissal based solely on a contractual forum-selection clause.

Therefore, as a matter of law, a forum-selection clause cannot render a statutorily

authorized venue "improper" within the meaning of CR 12(b)(3).

   Here, it is undisputed that the plaintiffs brought this action in a statutorily

authorized venue.  Therefore, we affirm that the defendants' CR 12(b)(3) motion to

dismiss for improper venue cannot succeed as a matter of law.  We decline to

---

[1] Different considerations may arise where a forum-selection clause is not mandatory or designates a forum within the state.  We do not address such considerations here.

[2] The contrary view expressed in *Voicelink* is overruled.

resolve the parties' underlying dispute as to the enforceability of the forum-selection clause because, at this stage of the proceedings, there are no outstanding motions presenting that issue. On remand, any party may file any procedurally proper motion regarding the enforceability of the forum-selection clause, should they wish to do so. Thus, we affirm in result and remand to the superior court for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

A.     The parties, the contract, and the plaintiffs' complaint

Defendant Nu Skin Enterprises Inc. is "a publicly-traded company formed in the State of Delaware." Clerk's Papers (CP) at 83. Nu Skin "markets beauty and nutritional products through a direct-sales, multi-level marketing network of independent contractor[s]," referred to in this opinion as "Distributors." *Id.* at 199. The plaintiffs in this case (Plaintiffs) identify as Distributors "who have become disillusioned."[3] *Id.* at 28. Four of the Plaintiffs are Washington residents; the remaining five are residents of Utah, California, and Oklahoma.

The relationship between Nu Skin and its Distributors is governed by a form contract, including a "Distributor Agreement" and a "Policies and Procedures" manual. Broadly speaking, there are two ways in which Distributors earn money

---

[3] Plaintiff Debra Robbins is not a Distributor; her claims arise from the Distributorship of her husband, plaintiff Max Robbins. It is currently undisputed that Debra Robbins is in the same position as the other Plaintiffs.

through their contracts with Nu Skin. First, a Distributor may purchase Nu Skin products at wholesale prices and then resell them at a profit through person-to-person sales. Second, an existing Distributor may sponsor a new Distributor to join Nu Skin, thereby allowing the existing Distributor to share in the revenue generated by the new Distributor.

Plaintiffs allege that Nu Skin is an unlawful "pyramid scheme" because it is "functionally very difficult for any [Distributor] to actually turn a profit on sale of Product alone; if [a Distributor] is to make money through Nu Skin's scheme, it must be by recruiting new [Distributors]." *Id.* at 27. Based on these and other allegations, Plaintiffs commenced this action (the Washington Action) in Spokane County Superior Court against defendants Nu Skin, affiliate Pharmanex LLC, 10 higher-level Distributors, and unknown Jane and John Does.[4] The complaint lists causes of action based on the Consumer Protection Act, ch. 19.86 RCW, the Antipyramid Promotional Scheme Act, ch. 19.275 RCW, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, tortious interference with business expectancy, and negligent misrepresentation.

Plaintiffs' complaint alleges that venue is proper in Spokane County because "the events that gave rise to claims occurred in substantial part in Spokane County and Defendants transact business in Spokane County." CP at 32. However, Nu

---

[4] For purposes of this opinion, all defense arguments are attributed to Nu Skin.

Skin's form contract includes both a forum-selection clause and an arbitration agreement. The forum-selection clause provides that "Utah will be the exclusive venue for arbitration or any other resolution of any Disputes."[5] Resp'ts' Suppl. Br., App. A-3, at 52. The arbitration agreement provides that "mandatory and binding arbitration is the sole means to resolve any and all Disputes."[6] *Id.* at 49 (some capitalization omitted). Plaintiffs allege that "the Arbitration Clause, including any limitation on jurisdiction to the court of the state of Utah therein," is "unconscionable" and "unenforceable." CP at 55.

B.      Procedural history in the state and federal trial courts

Before filing a response to Plaintiffs' complaint in the Washington Action, Nu Skin initiated a separate action (the Utah Action) in the United States District Court for the District of Utah. In the Utah Action, Nu Skin moved to compel arbitration and to enjoin further proceedings in the Washington Action, citing the contractual arbitration agreement and the Federal Arbitration Act (FAA), 9 U.S.C. § 4. Plaintiffs opposed Nu Skin's motion to compel and moved for dismissal of the Utah Action.

---

[5] The forum-selection clause appears three times in Nu Skin's form contract: (1) Distributor Agreement, Part D, Mandatory and Binding Arbitration Agreement, (2) Policies & Procedures, Ch. 7, Arbitration (in slightly different language), and (3) Policies & Procedures, Ch. 8, General Terms. *See* Resp'ts' Suppl. Br., App. A-2, at 44, App. A-3, at 49, 52.

[6] The arbitration agreement appears twice in Nu Skin's form contract: (1) Distributor Agreement, Part D, Mandatory and Binding Arbitration Agreement and (2) Policies & Procedures, Ch. 7, Arbitration. *See* Resp'ts' Suppl. Br., App. A-2, at 44, App. A-3, at 49-51.

While the motion to compel was pending in the Utah Action, Nu Skin filed a CR 12(b)(3) motion to dismiss the Washington Action "for improper venue." CP at 199. Nu Skin's motion to dismiss was not based on Washington's venue statutes or court rules but on the forum-selection clause in the parties' contract. Alternatively, Nu Skin moved to stay the Washington Action pending resolution of its motion to compel in the Utah Action.

In response to Nu Skin's CR 12(b)(3) motion, Plaintiffs asserted that "this is really a matter of not only the forum selection clause, but also the arbitration agreement of which it is a part." *Id.* at 236. Based on this view, Plaintiffs did not distinguish between the arbitration agreement and the forum-selection clause, asserting that neither provision was applicable because the Washington Action does not meet the contractual definition of a "Dispute." *Id*. Plaintiffs further argued that neither the arbitration agreement nor the forum-selection clause should be enforced because certain provisions of the arbitration agreement would allegedly impair their state statutory claims.

Following oral argument, the superior court denied Nu Skin's motion to dismiss or stay, ruling that the Washington Action "is not a 'Dispute' within the meaning of the Contract" and that Spokane County "is the proper venue for this case." *Id.* at 345. Nu Skin moved for reconsideration, arguing in part that "[w]hether venue is proper in Washington is irrelevant" to its motion to dismiss for

7

improper venue.  *Id.* at 349.  Reconsideration was denied and Nu Skin moved for discretionary review.

The Utah federal district court subsequently denied Nu Skin's motion to compel arbitration and dismissed the Utah Action.  The district court gave preclusive effect to the superior court's order in the Washington Action, ruling "the underlying Complaint is not a 'Dispute' within the meaning of the Contract" and therefore "does not fall within the scope of the arbitration agreement."  *Nu Skin Enters., Inc. v. Raab*, 2022 WL 2118223, at *11 (D. Utah June 13, 2022) (court order).  Nu Skin filed a notice of appeal.

C.     Decisions on review

In the Washington Action, the Court of Appeals granted discretionary review and issued a published opinion affirming in part, reversing in part, and remanding for further proceedings.  *Raab*, 28 Wn. App. 2d 365.  To provide context for the issues before this court, it is necessary to review the Court of Appeals' opinion in some detail.[7]

1.     Holding that Plaintiffs' complaint is a "Dispute"

First, the Court of Appeals reversed in part, holding that the Washington Action meets the contractual definition of a "Dispute."  Plaintiffs do not challenge

---

[7] The order in which the Court of Appeals addressed the issues has been revised somewhat for organizational purposes.

this holding on review. Thus, it is undisputed that "'Disputes' is broadly defined, and the Plaintiffs' complaint falls within the definition." *Id.* at 393.

As a result, the Tenth Circuit Court of Appeals reversed the federal district court's order dismissing the Utah Action. The Tenth Circuit explained that "preclusion was the basis of the district court's decision," but the superior court's interpretation of "Dispute" in the Washington Action "no longer has preclusive effect." *Nu Skin Enters., Inc. v. Raab*, 2024 WL 1178016, at *1 (10th Cir. Mar. 19, 2024) (court order). Therefore, the Tenth Circuit remanded for further proceedings, "express[ing] no view on any other issue in this case." *Id.* The Utah Action is currently pending in federal district court.

2.      Holding that Nu Skin's motion to dismiss was correctly denied

Next, the Court of Appeals in the Washington Action affirmed in result, holding that Nu Skin's CR 12(b)(3) motion to dismiss was correctly denied. *Raab*, 28 Wn. App. 2d at 378-88. This portion of the analysis is divided into two sections, first addressing CR 12(b)(3) and then addressing the FAA.

As to CR 12(b)(3), the Court of Appeals held sua sponte that a motion to dismiss for improper venue is not the correct procedure to seek enforcement of a contractual forum-selection clause. *Id.* at 378-80 (citing *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct.*, 571 U.S. 49, 134 S. Ct. 568, 187 L. Ed. 2d 487 (2013)). The Court of Appeals noted that the complaint states a "sufficient basis for venue under

9

RCW 4.12.025" in Spokane County, which "supported denying the CR 12(b)(3) motion." *Id.* at 379-80. It is undisputed on review that Spokane County is a statutorily authorized venue for the Washington Action.

As to the FAA, the Court of Appeals engaged in a lengthy analysis of delegation and conflict preemption principles, ultimately holding that the FAA does not require dismissal of the Washington Action. *Id.* at 380-88. On review in this court, Nu Skin does not argue that the FAA provides an independent basis for dismissal of the Washington Action.

3.      Guidance to the superior court on remand

Finally, the Court of Appeals "remand[ed] the issue of whether to enforce the forum selection clause to be addressed anew by the superior court," and provided extensive guidance for this analysis. *Id.* at 394. However, at this stage of the proceedings, there are no outstanding motions to be addressed on remand.[8] We cannot know which arguments or motions, if any, the parties may make regarding enforcement of the forum-selection clause when this case returns to superior court. Therefore, although the Court of Appeals' guidance is summarized here and may

---

[8] As discussed further below, Nu Skin's CR 12(b)(3) motion cannot succeed as a matter of law. No party has filed any other motion in the Washington Action seeking to enforce (or avoid) the forum-selection clause.

10

provide useful persuasive authority, its case-specific conclusions are not binding

on the superior court or the parties on remand.[9]

The Court of Appeals first reviewed the standards for determining

"[w]hether forum selection clauses are valid and enforceable" as a matter of

Washington law.[10] *Id.* at 394-95 (discussing *Dix v. ICT Grp., Inc.*, 160 Wn.2d 826,

161 P.3d 1016 (2007)). In accordance with this court's opinion in *Dix*, forum-

selection clauses are "'presumptively valid and enforceable'" unless the party

resisting enforcement makes "'a clear showing that, in the particular circumstance,

enforcement would be unreasonable.'" *Id.* at 395 (internal quotation marks

omitted) (quoting *Dix*, 160 Wn.2d at 834). Enforcement of a forum-selection

clause is "'unreasonable'" if

> "(i) it was induced by fraud or overreaching, (ii) the contractually
> selected forum is so unfair and inconvenient as, for all practical
> purposes, to deprive the plaintiff of a remedy or of its day in court, or
> (iii) enforcement would contravene a strong public policy of the State
> where the action is filed."

*Id.* (internal quotation marks omitted) (quoting *Dix*, 160 Wn.2d at 834).

Next, the Court of Appeals addressed Plaintiffs' allegations that the

arbitration agreement is unconscionable, holding this issue "could be relevant" to

---

[9] Because the Court of Appeals' guidance on remand is nonbinding dicta, we decline to address matters of issue preservation and "the parties' litigation choices." Pet. for Rev. at 2.
    [10] It is undisputed that Washington law governs enforcement of the forum-selection clause in this case.

11

enforcement of the forum-selection clause. *Id.* at 410. Yet, the court concluded that "[t]he arguments for and against unconscionability that are presented on appeal go well beyond the development of that issue in superior court," and remanded for the superior court to "consider the relevance of unconscionability to enforcement of the forum selection clause." *Id.* at 399.

Finally, the Court of Appeals rejected Nu Skin's argument that unconscionability must be determined in accordance with Utah law pursuant to a contractual choice-of-law provision. The Court of Appeals explained that "Washington courts generally enforce choice of law provisions" but must conduct a choice-of-law analysis "if a real conflict exists between the laws or interests of Washington and the laws or interests of another state." *Id.* Where a real conflict exists, the analysis is governed by *Restatement (Second) of Conflict of Laws* (Am. L. Inst. 1971), as set forth by this court in *McKee v. AT&T Corp.*, 164 Wn.2d 372, 384, 191 P.3d 845 (2008). Applying this analytical framework, the Court of Appeals concluded that "Washington law will apply to the Plaintiffs' contentions of unconscionability if enforcement of the forum selection clause is denied." *Raab*, 28 Wn. App. 2d at 399 (italics omitted).

We granted Nu Skin's petition for review and accepted an amicus brief from the Washington State Association for Justice Foundation. Both parties have filed answers to the amicus brief.

ISSUE

Is CR 12(b)(3) the correct procedural mechanism for a defendant in a Washington civil action to seek enforcement of a contractual forum-selection clause designating a mandatory, non-Washington forum?

ANALYSIS

Although this litigation touches on many complex issues, the only matter before us on interlocutory review is the superior court's order denying Nu Skin's CR 12(b)(3) motion to dismiss for improper venue.[11]  Because Nu Skin seeks enforcement of a forum-selection clause, the standard of review is abuse of discretion.  *Dix*, 160 Wn.2d at 833.  This standard "gives deference to a trial court's fact-specific determination on enforceability of a forum selection clause, while permitting reversal where an incorrect legal standard is applied."  *Id.* However, when addressing "a pure question of law," our review is de novo.  *Id.* at 833-34.  This case presents a pure question of law.

We must determine whether a CR 12(b)(3) motion to dismiss for improper venue is the correct procedural mechanism to seek enforcement of a contractual forum-selection clause designating a mandatory, non-Washington forum.  Our opinion in *Dix* declined to resolve this issue, and it has remained undecided by this

---

[11] We do not address Nu Skin's alternative motion to stay because Nu Skin acknowledged that motion became "moot" following the federal district court's dismissal of the Utah Action.  Mot. to Suppl. Rec. at 4 (Wash. Ct. App. No. 38842-5-III (2022)).

court. *See id.* at 833; *Oltman v. Holland Am. Line USA, Inc.*, 163 Wn.2d 236, 244 n.5, 178 P.3d 981 (2008). However, in this case, the Court of Appeals held sua sponte that CR 12(b)(3) is not the correct procedural mechanism, contrary to the published opinion in *Voicelink*, 86 Wn. App. 613. We exercise our discretion to resolve this split of authorities, affirm the Court of Appeals in this case, and overrule *Voicelink*'s contrary holding.

Our resolution of this issue is dispositive on interlocutory review. Because CR 12(b)(3) is not the correct procedural mechanism to seek enforcement of a forum-selection clause designating a mandatory, non-Washington forum, Nu Skin's CR 12(b)(3) motion cannot succeed as a matter of law. Thus, we affirm in result and remand to the superior court for further proceedings.

A.     We exercise our discretion to reach this issue

Preliminarily, we must decide whether to reach this issue at all. Nu Skin correctly points out that the Court of Appeals decided that CR 12(b)(3) is inapplicable to the enforcement of forum-selection clauses sua sponte, "without the benefit of the parties' briefing." Pet. for Rev. at 26. As a result, Nu Skin suggests we should summarily vacate the Court of Appeals' holding here and revert to the standard set forth in *Voicelink* without further analysis. We decline to do so.

Appellate courts have discretion to resolve "an issue which is not set forth in the briefs" if it is necessary "to properly decide a case." RAP 12.1(b). This

discretion certainly has limits; for example, an appellate court may not sua sponte raise "a whole new unpleaded claim depending on factual allegations that were never presented in or proved to the trial court." *Dalton M, LLC v. N. Cascade Tr. Servs., Inc.*, 2 Wn.3d 36, 40, 534 P.3d 339 (2023). However, whether CR 12(b)(3) applies to the enforcement of forum-selection clauses is a question of law, which does not depend on the specific facts presented. The parties have had ample opportunity to address this issue in their briefing to this court, and it is necessary to properly decide this case on interlocutory review. Most importantly, only this court has the authority to resolve the split of published appellate case law discussed above. Therefore, we exercise our discretion to do so.[12]

B.      As a matter of law, a contractual forum-selection clause cannot make a statutorily authorized venue "improper" within the meaning of CR 12(b)(3)

The law governing enforcement of contractual forum-selection clauses has evolved since *Voicelink* was decided in 1997. At that time, there was no relevant Washington precedent, and federal courts were "split over the appropriate method of pleading a motion for dismissal under a forum selection clause." *Dix*, 160 Wn.2d at 833. After reviewing various approaches, *Voicelink* followed the majority of federal courts at the time, which had adopted Fed. R. Civ. P. (FRCP) 12(b)(3) as the correct procedural mechanism. 86 Wn. App. at 622-25.

---

[12] As a result, we decline to address the moot question of whether the Court of Appeals complied with RAP 12.1 in raising the applicability of CR 12(b)(3) sua sponte.

*Voicelink*'s reliance on federal case law was reasonable, given the identical language of FRCP 12(b)(3) and CR 12(b)(3); both rules contemplate dismissal of a civil action on the basis of "improper venue." However, the federal authorities supporting *Voicelink*'s analysis were subsequently abrogated by *Atlantic Marine*, 571 U.S. 49, in which the United States Supreme Court unanimously rejected the application of FRCP 12(b)(3) in this context.

In *Atlantic Marine*, the Supreme Court observed that FRCP 12(b)(3)'s plain language "allow[s] dismissal only when *venue* is . . . '*improper*.'" *Id.* at 55 (emphasis added). However, "'venue'" is a "special statutory term," with a narrower meaning than the general term "'forum.'" *Id.* at 56. Venue "depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws, and those provisions say nothing about a forum-selection clause." *Id.* at 55. Therefore, the Court held that "venue is proper so long as the requirements of [applicable venue statutes] are met, irrespective of any forum-selection clause." *Id.* at 57. Several states have followed *Atlantic Marine*'s holding on this point. *E.g.*, *Margolis v. Daily Direct LLC*, 2023 VT 20, ¶ 6, 218 Vt. 31, 297 A.3d 144; *Tucker v. Cochran Firm-Crim. Def. Birmingham LLC*, 2014 OK 112, ¶¶ 15-17, 341 P.3d 673. We now do the same.

"We interpret court rules in the same manner as statutes, beginning with the plain language of the rule." *State v. Walker*, 199 Wn.2d 796, 800, 513 P.3d 111

16

(2022). The plain language of CR 12(b)(3) authorizes dismissal only where "venue" is "improper." However, as illustrated by the arguments in this case, the rule's plain language makes little sense where CR 12(b)(3) is invoked to enforce a contractual forum-selection clause. Indeed, a defendant relying on CR 12(b)(3) to enforce a forum-selection clause may feel compelled to make the illogical argument that proper venue is "irrelevant" to its motion to dismiss for improper venue. CP at 349; Br. of Appellants at 2 (Wash. Ct. App. No. 38842-5-III (2022)). We decline to adopt an approach that is so clearly inconsistent with the plain language of CR 12(b)(3). Instead, we consider persuasive federal authorities on the enforcement of forum-selection clauses, as we have done in previous cases. *See Dix*, 160 Wn.2d at 834; *Oltman*, 163 Wn.2d at 244-45, 252-59.

Both FRCP 12(b)(3) and CR 12(b)(3) "authorize dismissal only when venue is . . . 'improper.'" *Atl. Marine*, 571 U.S. at 55. In the federal system, proper venue "depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws." *Id.* Therefore, "venue in 'all civil actions' must be determined in accordance with the criteria outlined" by federal statute, "irrespective of any forum-selection clause." *Id.* at 56-57.

Likewise, in Washington, "venue" is a specific term generally referring "to *the county within the state* where a lawsuit may be brought or heard" in accordance with Washington statutes and court rules. *Voicelink*, 86 Wn. App. at 622

(emphasis added). By contrast, the "forum" for an action need not be a county within the state; a contractual forum-selection clause may designate another state, or even another country, as the forum for dispute resolution. *E.g.*, *Dix*, 160 Wn.2d at 828-29 (Virginia); *Culinary Ventures, Ltd. v. Microsoft Corp.*, 26 Wn. App. 2d 396, 399, 527 P.3d 122, *review denied*, 1 Wn.3d 1029 (2023) (Ireland). Thus, like the federal courts, we decline to "conflate[ ] the special statutory term 'venue' and the word 'forum.'" *Atl. Marine*, 571 U.S. at 56. Instead, we hold that for purposes of CR 12(b)(3), a determination of "improper venue" is governed by Washington venue statutes and court rules.

Federal venue statutes "say nothing about a forum-selection clause." *Id.* at 55. Similarly, Nu Skin has not cited, and we have not located, any Washington venue statutes or court rules authorizing dismissal of an action from a statutorily authorized venue due to a contractual forum-selection clause.[13] *See* ch. 4.12 RCW; CR 82. Therefore, if a venue is authorized by an applicable statute or court rule, that venue cannot be "improper" within the meaning of CR 12(b)(3), "irrespective of any forum-selection clause." *Atl. Marine*, 571 U.S. at 57.

As noted above, it is undisputed that Spokane County is a statutorily authorized venue for the Washington Action. Thus, venue in Spokane County is

---

[13] A "stipulation in writing" as to venue may support *transfer* to another "county of the state." RCW 4.12.080. However, this provision does not permit dismissal, and it does not address the effect of a forum-selection clause designating an out-of-state forum.

not "improper" within the meaning of CR 12(b)(3), and Nu Skin's motion to dismiss cannot succeed as a matter of law. On that basis, we affirm the denial of Nu Skin's CR 12(b)(3) motion.

C.      We decline to reach additional issues at this interlocutory stage of review

In its briefing on review, Nu Skin challenges various aspects of the Court of Appeals' guidance on remand. We decline to resolve Nu Skin's challenges because, as noted above, those portions of the Court of Appeals' opinion are nonbinding dicta.

Nu Skin also argues that the Court of Appeals "did not say how a party should go about enforcing a forum-selection clause when a plaintiff disregards it, just that it should be done via a means other than a CR 12(b)(3) motion." Pet. for Rev. at 25. This is true, and we acknowledge that Washington law on this issue has not been fully developed. However, Nu Skin fails to provide any briefing on what the correct procedural mechanism should be if not CR 12(b)(3). Therefore, we decline to resolve that question on interlocutory review in this case.

In contrast to the up-or-down decision of whether CR 12(b)(3) applies in this context, deciding which procedural mechanisms *do* apply is a complex question whose outcome may vary depending on the facts presented. For example, our case law recognizes that a CR 56 motion for summary judgment is an available procedural mechanism, and we have provided guidance on the proper standard of

review in this context. *See Oltman*, 163 Wn.2d at 242-43 & n.4. However, summary judgment is not possible "if issues of material fact relating to the validity of the forum-selection clause arise." *Atl. Marine*, 571 U.S. at 61 n.4. Thus, the appropriate procedural mechanism to employ in any particular case is a fact-dependent question, which may touch on counsel's strategic decision-making process. We decline to resolve such a complicated issue at this interlocutory stage without briefing from the parties.

The complexity of this question is further illustrated by the different approaches taken by other jurisdictions. For example, the United States Supreme Court held in *Atlantic Marine* that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*," subject to certain adjustments.[14] *Id.* at 60. Several states have adopted a similar approach, but some have made modifications based on independent state law. *E.g.*, *N. Nat. Gas Co. v. Centennial Res. Prod., LLC*, 316 Neb. 263, 278-80, 4 N.W.3d 185, *cert denied*, 145 S. Ct. 170 (2024); *Oxford Glob. Res., LLC v. Hernandez*, 480 Mass. 462, 472-75 & n.8, 106 N.E.3d 556 (2018). Other states have specific court rules and statutes governing dismissal based on

---

[14] Washington law recognizes motions for dismissal based on the doctrine of forum non conveniens pursuant to the courts' inherent "discretionary power to decline a proper assertion of its jurisdiction 'when the convenience of the parties and the ends of justice would be better served if the action were brought and tried in another forum.'" *Sales v. Weyerhauser Co.*, 163 Wn.2d 14, 20, 177 P.3d 1122 (2008) (quoting *Johnson v. Spider Staging Corp.*, 87 Wn.2d 577, 579, 555 P.2d 997 (1976)).

forum-selection clauses, and still others view the enforceability of a forum-selection clause as "a merits-based issue on the meaning of a specific provision of a contract," which may be raised in a motion to dismiss or for summary judgment. *Barshaw v. Allegheny Performance Plastics, LLC*, 334 Mich. App. 741, 747-49, 965 N.W.2d 729 (2020) (citing MICH. CT. R. § 2.116(C)(7)-(8); MICH. COMP. LAWS § 600.745(3)); *Tucker*, 2014 OK 112, ¶¶ 20-21.

Given the complexity of the issue, the differing approaches of other jurisdictions, and the lack of briefing from the parties, we decline to provide an advisory opinion detailing every procedure that could potentially apply in this context. On remand, any party may file any procedurally proper motion regarding the enforceability of the forum-selection clause, should they choose to do so. Regardless of the procedure selected, the substantive analysis must follow this court's unanimous opinion in *Dix*, 160 Wn.2d 826.

CONCLUSION

We affirm that Nu Skin's CR 12(b)(3) motion was correctly denied because a motion to dismiss for improper venue is not the correct procedural mechanism to seek enforcement of a contractual forum-selection clause. The contrary opinion expressed in *Voicelink* is overruled. We remand to the superior court for further proceedings consistent with this opinion.

_____
Yu, J.

WE CONCUR:

_____
Stephens, C.J.

_____
Gordon McCloud, J.

_____
Johnson, J.

_____
Whitener, J.

_____
Madsen, J.

_____
Mann, J.P.T.

_____
González, J.